**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

XIALAND LLC,

      Plaintiff,

           v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A

      Defendants.

Case No.: 1:22-cv-01276

---

John Di Giacomo (P73056)
Eric Misterovich (P73422)
REVISION LEGAL, PLLC
Attorneys for Plaintiff
444 Cass St., Suite D
Traverse City, Michigan 49684
T: (231) 714-0100
F: (231) 714-0200
john@revisionlegal.com
eric@revisionlegal.com

---

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING TEMPORARY TRANSFER OF THE DOMAIN NAMES, TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND ELECTRONIC SERVICE OF PROCESS**

Plaintiff XiaLand LLC ("Plaintiff" or "XiaLand") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary transfer of the Domain Names, a temporary asset restraint, expedited discovery, and electronic service of process (the "*Ex Parte* Motion").

**I.       INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff XiaLand LLC ("Plaintiff" or "XiaLand") is requesting temporary *ex parte* relief based on an action for copyright infringement, tortious interference with a contractual relationship, and violation of Illinois' right of publicity act against the defendants identified on Schedule "A" (ECF [1-1]) to the Complaint (collectively the "Defendants"). As alleged in XiaLand's Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling products, including content created by and maintained by Plaintiff, using infringing and counterfeit versions of XiaLands's common law trademark rights, unauthorized copies of XiaLand's federally registered copyrighted content, or both (collectively, the "Unauthorized XiaLand Content"), through, at least, the fully interactive, e-commerce websites operating under several aliases and at several domain names ("Websites").

Defendants run a counterfeiting and copyright infringement operation and have targeted sales to Illinois residents by setting up and operating domain platforms that distribute and advertise Unauthorized XiaLand Content, using one or more Aliases through which Illinois residents can the view unauthorized and counterfeit XiaLand content. The e-commerce websites operating under the aliases share unique identifiers establishing a logical relationship between them. Further, Defendants attempt to avoid and mitigate liability by operating under one or more Aliases to conceal both their identities and the full scope and interworking of their operation. XiaLand, through counsel, has attempted to contact the owners of these infringing domains, however none of the listed Defendants have responded to counsel's copyright infringement claims and concerns.

The lack of any response by the Defendants leads XiaLand to believe their identifies are intentionally withheld, in attempt to circumvent any liability for their actions. XiaLand is forced to file these actions to combat Defendants' counterfeiting of its common law trademarks and

2

infringement of its registered copyrights, as well as to protect unknowing consumers from the Unauthorized XiaLand Content over the Internet. Defendants' ongoing unlawful activities should be immediately restrained, and XiaLand respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

## II.     STATEMENT OF FACTS

### A.  XiaLand's Trademarks, Copyrights and Products

Plaintiff's operates a streaming and media content business that sells its content through OnlyFans, an adult content platform that allows its users to sell images and videos to third parties and interact with patrons and fans. Plaintiff has created a multitude of content, through video and images, that have all been protected through federal copyright registration, under Registration Number VAu 1-453-891 ("Copyright Registration"). **Exhibit 2**, XiaLand Copyrights. Additionally, Plaintiff claims rights to the common law trademark "XIALAND" which has been used in conjunction with Plaintiff's services and content since as early as March 17, 2017 ("XiaLand Trademark"). **Exhibit 1**, Xia Declaration.  Plaintiff has used their Copyright Registration and their XiaLand Trademark on the OnlyFans and Twitch platforms continuously since October 27, 2019, and has never licensed their intellectual property rights, including their right to publicity, to any of the listed Defendants.

### B.  Defendants' Unlawful Activities

The success of the XiaLand's content has resulted in its significant counterfeiting. **Exhibit 1**, Xia Declaration. Consequently, Plaintiff has invested significant time and resources in investigating infringement and counterfeiting efforts on the Internet. *Id.*. Recently, Plaintiff has identified numerous domains, including those operated by Defendants, which were and/or are distributing the Unauthorized XiaLand Content to consumers in this Judicial District and throughout the United States and identified on Schedule A to Plaintiff's Complaint. [ECF 1].

3

Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the e-commerce websites operated by Defendants, the Unauthorized XiaLand Content for distribution thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and that Defendants are an interrelated group of counterfeiters. *Id*. Specifically, Defendants scrape copyright material from other website, such as OnlyFans, and then upload it directly to their own website or actively encourage other users of their platforms to do the same. **Exhibit 1**, Xia Declaration. These Defendants platforms then generate revenue through participating in third-party advertising networks, such as RealSRV and Ackcdn.net. [ECF 1] at § 17. By offering the Unauthorized XiaLand Content, among other third-party copyrights, to users for free, Defendants' websites generate substantial internet traffic, and, consequentially, generate substantial funds from the advertising network scheme. In short, Defendants' websites steal copyright and trademarked content from other parties, display it on their own platform, then benefit from the advertising monetization of the internet traffic to their domain.

On or about November 9, 2021, Plaintiff discovered the Unauthorized XiaLand Content and submitted a notice of claimed infringement to the Defendants' websites under the Digital Millennium Copyright Act. **Exhibit 1**, Xia Declaration. Defendants failed to respond to this notice. *Id.* In addition to Plaintiff's own actions, Plaintiff's counsel created a user account on the same Websites, submitting a second notice of claimed infringement on the Websites. This notice was also ignored by Defendants. Finally, on November 16, 2021, Plaintiff again submitted a notice of claimed infringement on the Websites, in which Defendants failed to ever respond. To the date of the filling of Plaintiff's Complaint, the Unauthorized XiaLand Content is still being reproduced, distributed, and publicly displayed on Defendant's Websites.

### III.     ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to XiaLand's reputation and the goodwill symbolized by the XiaLand Trademark and the XiaLand Copyrights. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the XiaLand Trademark and the XiaLand Copyrights and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new domains under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court. Courts have recognized that civil actions against overseas counterfeiters and copyright infringers present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, XiaLand respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1121, *et seq*., the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois,

through at least the fully interactive, e-commerce websites. Specifically, Defendants' websites display advertisements that targets Illinois residents by setting up and operating e-commerce websites that advertise to and market to United States citizens, specifically those also in Illinois, through which Illinois residents can view the Unauthorized XiaLand Content. *See* Complaint at ¶ 5. *See, e.g., uBID, Inc. V. GoDaddy Group, Inc.*, 623 F.3d 421, 431 (7th Cir. 2010) (finding personal jurisdiction is permitted over defendants even if the website's services are not highly interactive for the jurisdiction's residents; no actual sale required). Moreover, Defendants' websites offer a forum feature that is open to subscription to Illinois residents and that solicits those residents to upload the copyrighted content of third parties in exchange for greater access to the content displayed within the forum. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce through its intentional advertising scheme, and has wrongfully caused XiaLand substantial injury in the State of Illinois.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting

the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

## B. XiaLand Will Likely Succeed on the Merits

### i. XiaLand Is Likely to Succeed on Its Copyright Infringement Claim

The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright." 17 U.S.C. § 501. Among these exclusive rights granted to XiaLand under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the XiaLand Copyright to the public. 17 U.S.C. § 106.

To establish a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (internal citations omitted). Copying can be shown through direct evidence, or it can be inferred where a defendant had access to the copyrighted work and the accused work is substantially similar. *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1102 (N.D. Ill. 2005). To determine whether there is a substantial similarity that indicates infringement, Courts use the "ordinary observer" test which asks whether "an ordinary reasonable person would conclude that the defendant unlawfully appropriated protectable expression by taking material of substance and value." *Id.* A work may be deemed infringing if it captures the "total concept and feel of the copyrighted work." *Id.*

With respect to the first element, XiaLand is the owner of relevant federally registered copyrights. **Exhibit 2**, XiaLand Copyrights. As to the second element, Defendants are willfully

and deliberately reproducing the XiaLand Copyrights in their entirety and are willfully and deliberately distributing copies of the XiaLand Copyrights to the public through their Websites. Defendants' unauthorized copies are identical or substantially similar to the XiaLand Copyrights. Such blatant copying infringes upon Plaintiff's exclusive rights under 17 U.S.C. §§ 106. As such, XiaLand has proved it has a reasonable likelihood of success on the merits for its copyright infringement claim.

    ii. <u>XiaLand Will Likely Succeed on Its False Designation of Origin Claims under 15 U.S.C. § 1125.</u>

A defendant is liable for false designation of origin under the Lanham Act if the goods or services "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person" 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, a plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*.

In this case, XiaLand's marks are distinctive and have been in Plaintiff's exclusive use since as early as March 17, 2017. **Exhibit 1**, Xia Declaration. Plaintiff uses the XIALAND common law trademark in relation to their content creation and streaming services. The term XIALAND has no known meaning outside of the clever use of Plaintiff's personal first name "Xia." The goods and services associated with the XIALAND mark are not inherently obvious by the trademark alone, as the term "LAND" here is only used to describe that the related goods and services are brought by "XIA" the owner's first name. However, by reading the mark without any context, the average consumer would not be suggested as to what the services entail. Thus,

any use of this term, especially when used in relation to adult content created by Plaintiff, is done so with intention to deceive the consuming public or designate the origin of the content.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendant's use of the XiaLand Trademark. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

XiaLand has submitted extensive documentation showing that Defendants are distributing Unauthorized XiaLand Content that is identical to genuine authorized XiaLand Content distributed on specific platforms, like OnlyFans, and using infringing and counterfeit marks identical and confusingly similar to the XiaLand Trademarks. **Exhibit 3**, Infringing Use Evidence; **Exhibit 1**, Xia Declaration. Defendants also active solicit this content. As shown in Exhibit 3, not all website domains have direct infringement evidence of XiaLand's Copyright or Trademark. However, all entities are commonly owned and operated by the individual or individuals associated with the account "Master Miller" from the first listed Defendant, leakemup.com. **Exhibit 4**, Master Miller Screenshot. In this screenshot, the user's identifying

information, or whatever information they chose to disclose, is apparent. Specifically, we see that the user Master Miller is a staff member of the domain, and importantly links us to their personal website of <ibradome.com>. *Id.*

Investigating further, it shows that multiple domains are connected with <ibradome.com>, including <leakemup.com>, the primary infringing domain in this matter. The other domains are listed are the following: <leaknudes.com>; <ns2.leaknudes.com>; <ns2.leaknudes.com>; <ipv4.leaknudes.com>; <lmlib.com>; <neothots.com>; and <thotsworld.store>. **Exhibit 5**, Internet Connections. As a result of their common ownership and their common scheme of using copyright protected adult content, these other domains have been listed as Defendants to this case. Finally, Defendant #9, operator of <thotsbay.com>, while no internet connections to the other Defendants as shown in Exhibit 5, also contains many copyright and trademark infringements, identical to the claims of the other listed Defendants. **Exhibit 6**, Infringing Use Evidence thotsbay.com.

Both XiaLand and Defendants advertise and distribute the XiaLand Copyrights and XiaLand Trademarks to consumers via the Internet, targeting consumers looking for genuine XiaLand content. *Id.* Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine XiaLand Copyrights and Trademarks from Unauthorized XiaLand Content. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine XiaLand Copyrights to view the Unauthorized XiaLand Content on the Defendant's platforms, instead of Plaintiff's own distribution mechanism. Accordingly, XiaLand is likely to establish a *prima facie* case of trademark infringement, counterfeiting, and false designation of origin.

      iii.    <u>XiaLand Will Likely Succeed on Its Claim of Trademark Infringement Under Illinois State Law</u>

10

In the third count in its Complaint, Plaintiff claims that Defendants are in violation of Illinois Trademark law and constitute trademark infringement under the Illinois state law. A claim of trademark infringement under 765 I.L.C.S. 1036/60, is analyzed under similar anti-dilution themes as the federal trademark infringement analysis. *See Berghoff Rest. Co. v. Lewis W. Berghoff, Inc.*, 499 F.2d 1183, 1185, 1974 U.S. App. LEXIS 7520, *4, 183 U.S.P.Q. (BNA) 77, 78 (7th Cir. 1974) (finding that surnames are permitted trademarks under Illinois Trademark Act, including common law rights as retained per 765 I.L.C.S. 1036/80. Analysis and likelihood of success under this Illinois statute is very similar to the Federal analysis, as already expanded upon in Section (B)(ii) of this Memorandum in support. For that reason, it is highly likely that XiaLand also succeeds on the third claim of Illinois state law trademark infringement.

    iv.    <u>XiaLand Will Likely Succeed on Its Claim of Violation of Illinois' Right of Publicity Act</u>

Plaintiff's final claim under their Complaint claim of Violation of Illinois Right of Publicity. Under Illinois law, which prohibits the "use of an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent." 765 I.L.C.S. 1075/30. The elements for an Illinois Right to Publicity Act claim are: (1) appropriation of a person's name or likeness, (2) without written consent, and (3) for another's commercial benefit. *Maremont v. Susan Fredman Design Group, Ltd.*, 2011 U.S. Dist. LEXIS 140446, 2011 WL 6101949, *6 (N.D. Ill. Dec. 7, 2011). These elements are easily met with the evidence and allegations currently made in the pleadings and this Motion by Plaintiff.

As evidenced by their line of work, XiaLand's content is also the embodiment of its owner's individual likeness, as an adult content creator XiaLand's owner, whom wishes to have her full identity concealed and thus will goes by Xia, uses her own likeness for the creation of the

11

content. The Unauthorized XiaLand Content uses this same likeness of Xia the individual. There is not consent, written or otherwise, to permit the use of Xia's likeness by Defendants. Finally, as already stated, Defendants benefit from the use of the Unauthorized XiaLand Content via internet traffic advertisement, in which Defendants' improper use of the Unauthorized XiaLand Content generates higher traffic and consequently higher pay from their advertisers. Having met a *prima facie* standard for Illinois's Right of Publicity Act, Plaintiff has demonstrated their high likelihood of success on their fourth claim from the Complaint.

### C. There Is No Adequate Remedy at Law, and XiaLand Will Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir.2000)). Likewise, an injury to a copyright holder that is "not easily measurable in monetary terms, such as injury to reputation or goodwill, is often viewed as irreparable." *EnVerve, Inc. v. Unger Meat Co.,* 779 F. Supp. 2d 840, 844 (N.D. Ill. 2011). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the XiaLand Trademark has and continues to irreparably harm XiaLand through diminished goodwill and brand confidence, damage to XiaLand's reputation, and loss of future sales. **Exhibit 1**, Xia Declaration. Defendants' advertising and work to increase traffic to their websites is and will continue to permanently damage XiaLand's own search engine optimization ("SEO") and website traffic it has worked to build over the past six years through its various platforms such as OnlyFans and Twitch. The extent of the harm to XiaLand's reputation and goodwill and the probable diversion of customers due to loss in brand confidence and damage to SEO are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). XiaLand will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). **Exhibit 1**, Xia Declaration.

### D. The Balancing of Harms Tips in XiaLand's Favor, and the Public Interest Is Served by Entry of the Injunction

As noted above, if the Court is satisfied that XiaLand has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted*,* then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that XiaLand will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc*., 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts

the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As XiaLand has demonstrated, Defendants have been profiting from the increased website traffic that the Unauthorized XiaLand Content has created. Thus, the balance of equities tips decisively in XiaLand's favor. The public is currently under the false impression that Defendants are operating their e-commerce websites with XiaLand's approval, endorsement, or at minimum the with Plaintiff's knowledge. In this case, the injury to the public is significant, and the injunctive relief that XiaLand seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A. An Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the XiaLand Trademark and XiaLand Copyright Is Appropriate

XiaLand requests a temporary injunction requiring the Defendants to immediately cease all use of the XiaLand Trademarks, or substantially similar marks and/or copying and distribution of the XiaLand Copyright, on or in connection with all e-commerce websites operating under the Aliases. Such relief is necessary to stop the ongoing harm to the XiaLand Trademark and

associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the XiaLand Trademark and/or copying and distribution of the XiaLand Copyright. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. XiaLand is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce websites used to distribute Unauthorized XiaLand Content. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished) (order granting *ex parte* Motion for Temporary Restraining Order).

**B. Transferring the Defendant Domain Names to XiaLand's Control Is Appropriate**

As part of the TRO, XiaLand also seeks temporary transfer of the Domain Names to XiaLand's control in order to disable the counterfeit websites and electronically publish notice of this case to Defendants. Defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant the relief requested herein. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). As such, XiaLand respectfully requests that, as part of the TRO, the Court require the relevant registries and/or registrars for the Domain Names to transfer the Domain Names to XiaLand, or consistent with the Court's Schedule A template order, disable the domains from operation until further order from this Court.

**C. Preventing the Fraudulent Transfer of Assets Is Appropriate**

XiaLand requests an *ex parte* restraint of Defendants' assets so that XiaLand's right to an equitable accounting of Defendants' profits from distribution of the Unauthorized XiaLand Content is not impaired. If such a restraint is not granted in this case, Defendants will likely disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, on information and belief, the Defendants in this case are residents of Russia or countries in the Middle East, such as Israel, and hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by XiaLand meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, XiaLand has shown a strong likelihood of succeeding on the merits of its false designation of origin, counterfeiting, and unfair competition claims, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), XiaLand is entitled, "subject to the principles of equity, to recover ... defendant's profits." Similarly, XiaLand has shown a strong likelihood of succeeding on the merits of its copyright infringement claim, and therefore XiaLand is entitled to recover "…any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). XiaLand's Complaint seeks, among other relief, that Defendants account for and pay to XiaLand all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant XiaLand's request for a prejudgment asset freeze to preserve relief sought by XiaLand.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard Tobacco Co. v. Montrose*

16

*Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (*citing Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

XiaLand has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### D. XiaLand Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

XiaLand respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit operations. The expedited discovery requested in XiaLand's Proposed TRO, attached as Exhibit A to Plaintiff's Motion, is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). XiaLand's seizure and asset restraint may have little meaningful effect without

the requested relief. Accordingly, XiaLand respectfully requests that expedited discovery be granted.

## V.      A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of XiaLand's evidence of false designation of origin, copyright infringement, Illinois trademark law infringement, and Illinois's right of publicity, XiaLand respectfully requests that this Court require XiaLand to post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv- 3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

## VI.      ELECTRONIC SERVICE IS WARRANTED

Xialand seeks leave to effectuate service of process by email and/or electronic publication. Plaintiff's requested form of electronic service is pulled direct from this Court's standard Schedule A Order. Specifically, Plaintiff seeks leave to provide notice of these proceedings to Defendants, including notice of the preliminary injunction hearing, service of process pursuant to Fed. R. Civ. P. 4(f)(3), and any future motions, by electronically publishing a link to the Complaint, any orders, and other relevant documents on a website and by sending an e-mail to the e-mail addresses provided for Defendants by third parties through expedited discovery. Plaintiff submits that providing notice via such electronic publication and/or email, along with any notice that Defendants receive from third party service providers, is reasonably calculated under the circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because off-shore e-commerce store operators offering for sale products using counterfeit trademarks typically: (1) do not provide or provide false, misleading and/or incomplete names and physical address information in order to conceal their locations and avoid liability for their unlawful conduct; and (2) rely primarily on electronic communications to communicate with their third party service providers and customers, demonstrating the reliability of this method of communication by which Defendants may be apprised of the pendency of this action. Authorizing service of process solely via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendants in this manner, XiaLand will almost certainly be left without the ability to pursue a final judgment.

## CONCLUSION

Defendants' unlawful operations are irreparably harming XiaLand's business, its distinctive XiaLand brand, and consumers. Without entry of the requested relief, Defendants' advertising and distribution of the Unauthorized XiaLand Content will continue to lead prospective purchasers and others to believe that Defendants' Unauthorized XiaLand Content has been manufactured by or emanate from XiaLand, when in fact, they have not. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing and consistent with previous similar cases, XiaLand respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

Date: March 15, 2022                                    XiaLand LLC


                                                        /s/ John DiGiacomo
                                                        John DiGiacomo
                                                        *Attorneys for Plaintiff*
                                                        Revision Legal, PLLC

444 Cass St., Suite D
Traverse City, MI 49684
Phone: (231) 714-0100
Fax: (231) 714-0200
eric@revisionlegal.com
john@revisionlegal.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on the date below, the foregoing was served on counsel of record via the Court's ECF system.

Date: March 15, 2022                                        XiaLand LLC


                                                           /s/ John DiGiacomo
                                                           John DiGiacomo
                                                           *Attorneys for Plaintiff*
                                                           Revision Legal, PLLC
                                                           444 Cass St., Suite D
                                                           Traverse City, MI 49684
                                                           Phone: (231) 714-0100
                                                           Fax: (231) 714-0200
                                                           eric@revisionlegal.com
                                                           john@revisionlegal.com