UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| XIALAND LLC, | |
| Plaintiff, | Case No.: 1:22-cv-01276 |
| v. | Hon. Martha M. Pacold |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A | Magistrate Hon. Sunil R. Harjani |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT**

Plaintiff XiaLand LLC, by and through its attorneys Revision Legal, PLLC, states the following in support of its Motion for Entry of Default and Default Judgment against all Defendants in this matter ("Defendants" or "Defaulting Defendants"), based on Plaintiff's action for copyright infringement, trademark infringement, and a violation of the Illinois Right of Publicity Act ("IRPA").

**STATEMENT OF FACTS**

Plaintiff operates a streaming and media content business that sells its content through OnlyFans, an adult content platform that allows its users to sell images and videos to third parties and interact with patrons and fans. Plaintiff has created a multitude of content, through video and images, that have been protected through federal copyright registration, under Registration Number VAu 1-453-891 ("Copyright Registration"). [14-1]. Additionally, Plaintiff has common law trademark rights to the trademark "XIALAND," which has been used in conjunction with Plaintiff's services and content since as early as March 17, 2017 ("XiaLand Trademark"). [9-1 at

¶ 3]. Plaintiff has used its Copyright Registration and XiaLand Trademark on the OnlyFans and Twitch platforms and has never licensed its intellectual property rights, including its right to publicity, to any of the listed Defendants. [9-1].

Plaintiff brings this action against defendants identified on Revised Schedule A to the Complaint (collectively, the "Defendants") [12] for copyright infringement, federal and state common law trademark infringement, and violation of the Illinois Right of Publicity Act. [11]. As alleged, Defendants are promoting, advertising, marketing, and distributing content created by and maintained by Plaintiff, using infringing versions of XiaLand's common law trademark rights, unauthorized copies of XiaLand's federally registered copyrighted content, or both, which include the likeness of the underlying performer (collectively, the "Unauthorized XiaLand Content"), through, at least, the fully interactive, websites operating under several aliases and at domain names ("Websites").

On April 1, 2022, this Court granted Plaintiff's Motion for Entry of a Temporary Restraining Order ("TRO"). [16]. The TRO authorized Plaintiff to provide notice of these proceedings to Defendants by electronically publishing a link to the Complaint, the TRO and other documents on a website and by sending an email to the email addresses identified for Defendants provided by third parties. [16]. On April 12, 2022, this Court granted Plaintiff's Motion to Extend the TRO. [20]. The Defaulting Defendants were served on April 28, 2022. [22-1]. On May 17, 202, this Court granted Plaintiff's Motion for Preliminary Injunction. [28].

Plaintiff now moves for entry of Default and Default Judgment against all Defendants in this case, which would bring a full and final resolution to this matter.

I.     JURISDICTION AND VENUE AND PROPER IN THIS COURT

This Court has subject matter jurisdiction over the claims in this action pursuant to the

Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over the Defaulting Defendants due to the Defendants' intentional acts to target its infringing activities toward residents of this Judicial District.

Defendants purposefully and intentionally availed themselves of this forum state by providing highly interactive online websites that are accessible to and used by residents of the State of Illinois and have displayed Plaintiff's copyrighted content and common law trademarks through these websites to residents of the State of Illinois in violation of Plaintiff's rights. [11 at ¶ 5]. *See, e.g., uBID, Inc. V. GoDaddy Group, Inc.*, 623 F.3d 421, 431 (7th Cir. 2010) (finding personal jurisdiction is permitted over defendants even if the website's services are not highly interactive for the jurisdiction's residents; no actual sale required). Moreover, Defendants' websites offer a forum feature that is open to subscription to Illinois residents and that solicits those residents to upload the copyrighted content of third parties in exchange for greater access to the content displayed within the forum. [11 at ¶ 5]. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce through its intentional advertising scheme, and has wrongfully caused XiaLand substantial injury in the State of Illinois.

**II.     ENTRY OF DEFAULT JUDGMENT IS PROPER**

In cases not seeking a sum certain, Rule 55(b)(2) permits the Court to enter default judgment, which establishes that the Defaulting Defendants are liable to Plaintiff for the claims within Plaintiff's complaint. *United States v Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). Upon entry of default, all well-pleaded allegations of a complaint, other than those relating to damages, are taken as true. *E360 Insight v The Spamhaus Project*, 500 F. F.3d 594, 602 (7th Cir. 2007).

### A. Copyright Infringement

The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright." 17 U.S.C. § 501. Among these rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Plaintiff's Copyrighted Designs to the public. 17 U.S.C. § 106.

To establish a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (internal citations omitted). Copying can be shown through direct evidence, or it can be inferred where a defendant had access to the copyrighted work and the accused work is substantially similar. *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1102 (N.D. Ill. 2005). To determine whether there is a substantial similarity that indicates infringement, Courts use the "ordinary observer" test which asks whether "an ordinary reasonable person would conclude that the defendant unlawfully appropriated protectable expression by taking material of substance and value." *Id.* A work may be deemed infringing if it captures the "total concept and feel of the copyrighted work." *Id.*

Plaintiff alleged that it is exclusive owner of the Copyright Registration. [11 at ¶ 12]. Plaintiff alleged that Defendants had access to and copied Plaintiff's copyrighted content and solicited others to do the same. [11 at ¶¶ 14-18, 29-39]. Since the Defendants failed to answer, this Court must accept the allegation in Plaintiff's Complaint as true. Fed. R. Civ. P. 8(b)(6); *E360 Insight*, 500 F.3d at 602. As a result, Plaintiff has satisfied the elements of a copyright infringement claim. Therefore, Plaintiff requests entry of default judgment with respects to its

4

copyright infringement claim in violation of 17 U.S.C. §§ 106 and 501.

### B. Trademark Infringement

A defendant is liable for trademark infringement pursuant to 15 U.S.C. § 1125(a) if the plaintiff can establish that (1) its mark is protectable and (2) the defendants' use of the mark is likely to cause confusion among consumers. *Poneman v. Nike, Inc.*, 161 F. Supp. 3d 619, 626 (N.D. Ill. 2016) citing *Anago Franchising, Inc. v. IMTN, Inc.*, 477 Fed.Appx. 383, 385 (7th Cir.2012) and *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). The same standard applies to Plaintiff's Count II (trademark infringement pursuant to 15 U.S.C. § 1125(a)) and Count III (common law trademark infringement under Illinois law). *Trans Union LLC v Credit Research, Inc.*, 142 F.Supp.2d 1029, 1038 (N.D. Ill. 2001).

Plaintiff alleged that it is exclusive owner of common law rights in and to the XIALAND trademark. [11 at ¶¶ 40-60]. This is a protectable mark. The spectrum of protectable marks was explained by *SportFuel, Inc. v. PepsiCo, Inc.,* 932 F.3d 589, 598–99 (7th Cir. 2019) (citation omitted):

> Trademark law awards trademark protection to various categories of words, terms, and phrases if consumers rely on those marks to identify and distinguish one company's goods or services from those of others. Marks are classified into five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. Generally, trademark law does not allow sellers to register marks for terms that are generic or descriptive of products or services…Conversely, the law affords automatic protection to suggestive, arbitrary, and fanciful terms, which are inherently distinctive.

Marks that are "made up" words, like Kodak or Exxon are fanciful marks. *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609 (7th Cir. 1986). XIALAND is a made-up word with no common usage or meaning and as a result, is a fanciful mark, is inherently distinctive, and protectable. Plaintiff has satisfied the first element of its trademark infringement claims.

Defendants' use of the XIALAND mark was in connection with Defendants' display of Unauthorized XiaLand Content, including the image and likeness of the underlying performer. In other words, the use of the XIALAND mark was inextricably intertwined with Plaintiff's original works, but displayed on pirate websites explicitly profiting from stolen content. [11 at ¶¶ 40-60]. The Defendants' use of the XIALAND mark conveys that such content was authorized to be displayed or is otherwise sponsored by Plaintiff when the opposite is true. Plaintiff has satisfied the second elements of its trademark infringement claims.

Therefore, Plaintiff requests entry of default judgment with respects to its claim for trademark infringement pursuant to 15 U.S.C. § 1125(a) and Illinois common law.

C. **Right of Publicity**

The Illinois Right of Publicity Act (IRPA) prohibits "us[ing] an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person." *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008 (7th Cir. 2019). 765 ILCS 1075/30(a). "A plaintiff must thus prove (1) the appropriation of one's identity, (2) without one's consent, (3) for another's commercial benefit." *Id*. citing *Trannel v. Prairie Ridge Media, Inc.*, 370 Ill.Dec. 157, 987 N.E.2d 923, 929 (Ill. App. Ct. 2013). "The IRPA defines identity as 'any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice.'" *Id*. citing 765 ILCS 1075/5. The IRPA's definition of "identity" is broad and courts should use an "expansive approach" when deciding what counts as identity. *Muzikowski v Paramount Pictures Corp*, 2003 WL 22872117 at *6 (N.D. Ill., Dec. 3, 2003). As to the third element, "commercial benefit," Illinois courts have found that using a person's picture on product packaging or to falsely imply endorsement of product count as a

"commercial" use or benefit. *Leto v RCA Corp.*, 341 F. Supp. 2d 1001 (N.D. Ill. 2004); *Trudeau v Lanoue*, 2006 WL 516579 (N.D. Ill., March 2, 2006).

Plaintiff alleged the Unauthorized XiaLand Content displayed the images of its underlying owner and that people subscribe to Plaintiff's content to view her image and likeness. [11 at ¶ 7]. This satisfies the first IRPA element. Plaintiff alleged that Defendants, without authorization, upload stolen XiaLand content to their websites and solicited others to do the same, resulting in increased website traffic to the Defendants' websites creating greater advertising revenue, and profit, to Defendants. [11 at ¶¶ 5, 8, 14-18, 61-66]. This satisfies the second and third IRPA elements.

Since the Defendants failed to answer, this Court must accept the allegations in Plaintiff's Complaint as true. Fed. R. Civ. P. 8(b)(6); *E360 Insight*, 500 F.3d at 602. As a result, Plaintiff has satisfied the elements of an IRPA claim violation of 765 ILCS/30.

### III. PLAINTIFF IS ENTITLED TO DAMAGES

#### A. Plaintiff is Entitled to its Actual Damages for Copyright Infringement Claim

Plaintiff's copyright claim is not entitled to statutory damages. Instead, a copyright owner is entitled to recover the actual damages suffered as a result of the infringement, and any profits of the infringer that are attributable to the infringement and not taken into account in computing the actual damages. 17 U.S.C. § 504(b). Actual damages are "usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer." *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003). Further, "[i]t is not improper for a jury to consider a hypothetical lost license fee or the value of the infringing use to the infringer to determine actual

damages, provided the amount is not based on 'undue speculation.'" *Id.* (quoting *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001)).

Plaintiff requests an award of actual damages based on its license fee for a monthly subscription through OnlyFans and special pay-per-view content. Specifically, Plaintiff charges a $8 per month subscription fee. **Exhibit 1**, Xia Declaration. The content stolen and uploaded to the Defendants' websites relevant to Plaintiff is only available to paying customers. Prior to the leak and in August 2021, Plaintiff had 683 subscribers. But, by the end of June 2022, that number dropped to 372. This is a loss of 311 monthly subscribers, or a 45% decline from August 2021. **Exhibit 1**, Xia Declaration. The revenue generated from 311 subscribers at $8/month equals $29,856.

At the time of drafting this Memorandum, Defendant <thotsbay.com> boasted of having a total of 20,880 registered users on the website *at that time*, including 18,323 members and an additional 2,557 guests. **Exhibit 2**, Screenshot. While Defendant <thotsbay.com> is free, it also provides a paid premium subscription that removes advertisements and provides other alleged benefits. The cost is a minimum of $10 purchase. **Exhibit 3**, <thotsbay.com> screenshot. In other words, <thotsbay.com> provides its user advertisement free content from thousands of performers for a one-time fee of $10, instead of paying a single performer $8/month.

As a result, Plaintiff requests this Court enter Default Judgement against the Defendants an award $ 29,856 in damages for their copyright infringement.

### B. Plaintiff is Entitled to its Actual Damages for Trademark Infringement Claim

In a similar fashion to copyright damages, A trademark plaintiff that has established infringement under 15 U.S.C. § 1125(a) "shall be entitled…to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and 93) the costs of the action." 15 U.S.C. § 1117(a).

8

Plaintiff's requested actual damages for its trademark claim are the same as the damages for its copyright claim, and Plaintiff relies on the arguments above.

### C. Plaintiff is Entitled to Actial Damages for Defendants' IRPA Violation

In a similar fashion to Plaintiff's other claims, a person that violates Section 30 of the IRPA "may be liable for either of the following, whichever is greater: (1) actual damages, profits derived from the unauthorized use, or both; or (2) $1,000." 765 ILCS 1075/40(a). This Court has stated that IRPA actual damages "can be proven in more than one manner, provided the factual method of proof satisfies two legal criteria: (1) the method must be based on the fair market value of the infringing use at the time of the infringement, plus interest; and (2) the method must not be predicated on mere speculation or conjecture." *Jordan v. Dominick's Finer Foods*, 115 F. Supp. 3d 950, 957 (N.D. Ill. 2015).

Plaintiff's requested actual damages for its IRPA claim are the same as the damages for its copyright claim, and Plaintiff relies on the arguments above.

### D. Plaintiff is Entitled to Punitive Damages for Defendants' IRPA Willful and Reckless IRPA Violation

The Court may award punitive damages against "a person found to have willfully violated Section 30 [of the IRPA]." 765 ILCS 1075/40(b). "A court may award punitive damages where the tortious acts are malicious or where they display a reckless disregard for others' rights." *Trannel v. Prairie Ridge Media, Inc.*, 2013 IL App (2d) 120725, ¶ 34, 987 N.E.2d 923, 933 (2013) (citations omitted). The purpose of punitive damages is to punish the tortfeasor and to deter others from the same conduct. *Id.* (citation omitted).

The United States Supreme Court provides three guideposts in determining the appropriate amount of punitive damages: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive

damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418, 123 S. Ct. 1513, 1520, 155 L. Ed. 2d 585 (2003). The most important of these guideposts is the reprehensibility of the defendant's misconduct. *Turner v. Firstar Bank, N.A.*, 363 Ill. App. 3d 1150, 1163, 845 N.E.2d 816, 827 (2006) citing *Campbell,* 538 U.S. at 419, 123 S.Ct. at 1521, 155 L.Ed.2d at 602. "To determine reprehensibility, reviewing courts consider the following factors: (1) whether the harm caused was physical as opposed to economic, (2) whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others, (3) whether the target of the conduct had financial vulnerability, (4) whether the conduct involved repeated actions or was an isolated incident, and (5) whether the harm was the result of intentional malice, trickery, deceit, or mere accident." *Id*. citing *Campbell,* 538 U.S. at 419, 123 S.Ct. at 1521, 155 L.Ed.2d at 602. Punitive damages should be proportional to the wrongfulness of the defendant's actions, but should also take into lack of compensatory damages available. *Mathias v. Accor Econ. Lodging, Inc*., 347 F.3d 672, 676 (7th Cir. 2003). Judge Posner explained this concept as follows:

> And still today one function of punitive-damages awards is to relieve the pressures on an overloaded system of criminal justice by providing a civil alternative to criminal prosecution of minor crimes. An example is deliberately spitting in a person's face, a criminal assault but because minor readily deterrable by the levying of what amounts to a civil fine through a suit for damages for the tort of battery. Compensatory damages would not do the trick in such a case, and this for three reasons: because they are difficult to determine in the case of acts that inflict largely dignitary harms; because in the spitting case they would be too slight to give the victim an incentive to sue, and he might decide instead to respond with violence— and an age-old purpose of the law of torts is to provide a substitute for violent retaliation against wrongful injury—and because to limit the plaintiff to compensatory damages would enable the defendant to commit the offensive act with impunity provided that he was willing to pay, and again there would be a danger that his act would incite a breach of the peace by his victim….When punitive damages are sought for billion-dollar

> oil spills and other huge economic injuries, the considerations that we have just canvassed fade. As the Court emphasized in *Campbell,* the fact that the plaintiffs in that case had been awarded very substantial compensatory damages—$1 million for a dispute over insurance coverage—greatly reduced the need for giving them a huge award of punitive damages ($145 million) as well in order to provide an effective remedy. Our case is closer to the spitting case.

*Id.* And the same is true for Plaintiff's case. Plaintiff lacked a formal copyright registration and trademark registration at the time of infringement, limiting its ability to recover actual damages only. But given the scope of Defendants' bad act, a substantial punitive damage award is just.

Illinois state courts have award punitive damages for IPRA claims when a specific trait or character was exploited for an endorsement in connection with commercial gain. *Smith v WGN, Inc.*, 47 Ill.App.2d 183 (1964) (without consent defendants used video footage of plaintiff for a commercial for hair spray); *Eick v Perk Dog Food Co.*, 347 Ill.App. 293 (1952) (without consent defendants used a picture of a visually impaired girl with her seeing-eye dog to promote the sales of dog food in connection with a contest through which purchasers could aid the visually handicapped); *Ainsworth v Century Supply Company*, 295 Ill.App.3d 633 (1988) (plaintiff consented to being an instructional video, but defendants then used that footage in a separate commercial).

The Defendants' entire business model is based on stealing. Specifically, <thotsbay.com> provides its users a "Ranking Up Guide" that shows users how to obtain certain "ranks" that provide the user some sort of premium benefit. Specifically, this is accomplished by receiving likes from other users on specific posts. In other words, the more content a user posts, the more likely they are to receive likes and the premium benefits. **Exhibit 4**, Ranking Up Guide. The forums on <thotsbay.com> are organized by what platform the content is stolen from, including Twitch, Only Fans, Patreon, and Instagram. And specifically, <thotsbay.com> has over 106,000

11

unique posts in the OnlyFans category, claiming to be home to "the biggest collection of OnlyFans girls on the web." **Exhibit 5**, <thotsbay.com> category screenshot. And <thotsbay.com> has specific rules in place to govern the posting of OnlyFans content, including the requirement that "All content posted in the OnlyFans category must be premium content, no social media content is allowed." **Exhibit 6**, <thotsbay.com> OnlyFans Posting Rules.

Much of the same is true as to Defendant <leakemup.com>. The domain name itself tells the story as it encourages users to leak stolen content to the website. This website also categorizes the leaks by categories. **Exhibit 7**, <leakemup.com> categories. It hosted over 32,000 messages regarding stolen OnlyFans content. **Exhibit 7**, <leakemup.com> categories.

These websites earn revenue by hosting stolen content. It is not a byproduct, it is their entire business. And as to Plaintiff, they willfully hosted stolen content as part of that business. Such reckless conduct deserves a substantial deterrent. Plaintiff requests $500,000 in statutory damages against each Defendant.

### IV. PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF

Finally, Plaintiff is entitled to entry of a permanent injunction enjoining the Defaulting Defendants from infringing its trademark, copyright, and publicity rights, including at least all injunctive relief previously awarded by this Court in the Preliminary Injunction. Specifically, and consistent with ¶ 2 of this Court's standard default judgment order, Plaintiff seeks a transfer of the <thotsbay.com> and <leakemup.com> domain names to Plaintiff's possession. This form of injunctive relief is proper as it will serve as a deterrent to future bad acts because Defendants depend upon the public because to navigate to a specific domain to share and display stolen content. Permanent transfer of the relevant domains to Plaintiff will, at a minimum, slow and frustrate the Defendants' purely illegal business model. This Court has previously found that a

12

substantial deterrent effect (albeit in the form of statutory damages) is proper when such bad actions occur online and subject to the widest audience possible. *See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., et al.*, 2017 WL 6733685, at *5 (N.D. Ill. Dec. 18, 2017) ("the fact that defendant's counterfeiting took place online favors a higher statutory damages award because online counterfeiting can reach a much wider audience than counterfeiting through a physical store."); *Luxottica Grp. S.p.A. v. Li Chen*, 2017 WL 836228, at *3 (N.D. Ill. Mar. 2, 2017) (granting $100,000 in statutory damages "because [defendant] advertised [counterfeit goods] on the internet, allowing for distribution far greater than if it sold the hats in a brick-and-mortar store.").

Defendants deserve the maximum possible deterrent effect for their brazen business model. Defendants intentionally use domain name registrars and hosting companies located overseas to avoid compliance with United States law, including the Digital Millennium Copyright Act ("DMCA"), that would provide a remedy to remove content without (for the most part) using judicial resources. Transfer of the relevant domains is just and warranted.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter Default and Default Judgment against each Defaulting Defendant and award damages consistent with the proposed order submitted to chambers.

Respectfully Submitted,

Date: June 29, 2022

/s/ Eric Misterovich
Eric Misterovich (P73422)
John Di Giacomo (P73056)
Revision Legal, PLLC
205 North Michigan Avenue, Ste. 810
Chicago, IL 60601
269-281-3908

13

eric@revisionlegal.com
john@revisionlegal.com
*Attorneys for Plaintiff*

**Certificate of Service**

  The undersigned hereby states that on the date below service was made of the foregoing Memorandum in Support of Motion for Entry of Default and Default Judgment to the attorneys of record of this case via the Court's ECF system.

Date: June 29, 2022　　　　　　　　　/s/ Eric Misterovich
　　　　　　　　　　　　　　　　　　Eric Misterovich (P73422)
　　　　　　　　　　　　　　　　　　John Di Giacomo (P73056)
　　　　　　　　　　　　　　　　　　Revision Legal, PLLC
　　　　　　　　　　　　　　　　　　205 North Michigan Avenue, Ste. 810
　　　　　　　　　　　　　　　　　　Chicago, IL 60601
　　　　　　　　　　　　　　　　　　269-281-3908
　　　　　　　　　　　　　　　　　　eric@revisionlegal.com
　　　　　　　　　　　　　　　　　　john@revisionlegal.com

　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*